THE SEABOARD AIR LINE RAILWAY, A CORPORATION, *Plaintiff in Error*, v. D. D. LANIER, *Defendant in Error*.

## Opinion Filed February 14, 1919.

Where the Statute requires every railroad company operating a railway in this State to maintain fences on both sides of its railroad "suitable and sufficient to prevent the intrusion of any cattle, horses, hogs or other domestic live stock upon its track," with such stock guards on both sides of a road crossing as will prevent cattle, horses, hogs or other domestic live stock entering such railroad enclosures," and liability is imposed upon the railroad company "who has failed to erect and maintain fences," &c. for "any and all cattle, horses, hogs or other domestic live stock which may be killed or injured by any train, engine or cars upon the track of the railroad," and the declaration alleges that the company "wholly failed to fence its track as required," and that two mules were by a locomotive "killed on or near its railroad track," a plea averring that "the said mules were by parties unknown to this defendant led upon the tracks of

the Seaboard Air Line Railway Company, a corporation, and there held and kept, by the parties so loading the said mules, upon the tracks of the said Seaboard Air Line Railway Company, in a deep cut on a curve, until the train of the said Seaboard Air Line Railway Company passed said point in the night, and while so passing, and without any failure of duty or fault or negligence on the part of the defendant, struck and killed said mules," states a defense, since the liability imposed by the Statute is for stock killed by trains when such stock has intruded or entered upon the track because of the failure of the railroad company to maintain the required fence and stock guards, and not for stock killed by a passing train because it was led, held and kept on the track by the tortious act of third persons, there being no negligence of the company in the killing.

A Writ of Error to the Circuit Court for Leon County; E. C. Love, Judge.

Judgment reversed.

W. J. Oven, for Plaintiff in Error.

Myers & Myers, for Defendant in Error.

WHITFIELD, J.—In substance the declaration herein alleges in one count that the defendant railroad company on a stated day in Leon County, "about one mile west of the city of Tallahassee, by the running of one of its locomotives, and a train attached thereto, it killed on or near its railway track, at or near the place aforesaid, two mules, the property of the plaintiff, of the value of Four Hundred Dollars;" and in another count that the defendant "about one mile west of the City of Tallahassee, by the running of one of its locomotives, and a train attached thereto, it killed on or near its railway

track, at or near the place aforesaid, two mules, the property of the plaintiff, of the value of Four Hundred Dollars; and it was then and there the duty of the said defendant to maintain a fence on both sides of its railroad track suitable and sufficient to prevent the intrusion of any cattle, horses, hogs or other domestic live stock upon its track, but the said defendant at the place aforesaid which was not within the limits of any incorporated city or town, or within one mile of any city of ten thousand inhabitants or more, wholly failed to fence its track as required, and althought the plaintiff presented to a claim agent of the said defendant his claim in writing for damages for the killing of said mules more than sixty days before the institution of this suit, the defendant has wholly failed and refused to pay for the same, and plaintiff claims double the value of said mules as his damages, and a reasonable attorney's fee to be determined by the court to be paid to his attorney in this behalf."

The defendant pleaded (1) not guilty; (2) "that prior to the alleged killing of the stock sued for and described in the plaintiff's declaration by the defendant, Seaboard Air Line Railway Company, and on to-wit: The 11th day of November, 1915, the said plaintiff made a conditional sale of the said mules referred to in plaintiff's declaration together with other property to one D J. Atkinson, Jr., and then and there, and thereafter, permitted the said D. J. Atkinson, Jr., to have and retain the custody and possession of the said mules, and that thereafter without any failure of duty or fault or negligence on the part of this defendant, and while the said D. J. Atkinson, Jr., had, with the consent of the plaintiff, the custody and possession of said mules, the said mules were by parties unknown to this defendant led upon the

tracks of the Seaboard Air Line Railway Company, a corporation, and there held and kept, by the parties so leading the said mules, upon the tracks of the said Seaboard Air Line Railway Company, in a deep cut on a curve, until the train of the said Seaboard Air Line Railway Company passed said point in the night, and while so passing. and without any failure of duty or fault or negligence on the part of the defendant, struck and killed said mules."

A demurrer to the second plea on the ground that "the second count alleges that the defendant failed to maintian the fence required by law, and this being admitted by the demurrer to be true the statute makes defendant liable for the killing of the animals whether defendant has been negligent or not," was sustained. Trial was had on the plea of not guilty. and verdict for the plaintiff in $300.00 was rendered.   To a judgment for $300.00 damages and $50.00 attorney fee the defendant took writ of error.

As the first count does not allege negligence in killing the mules or that a statute was violated, that count need not be further considered.

The statute on which the second count is predicated contains the following provisions:

"Every railroad company, or person or persons operating any railway in the State of Florida shall erect and construct and maintain fences on both sides of its railroad suitable and sufficient to prevent the intrusion of any cattle, horses, hogs, or other domestic live stock upon its track: Provided, that no fence shall be required. within the limits of any incorporated town or city, unless

by the ordinances of said town or city, nor within one mile of any city of ten thousand inhabitants."

"All fences enclosing railroads in this State shall be substantially built and shall be of such kind as to prevent the intrusion of any and all cattle, horses, hogs or other domestic live stock upon the track of the said railroad, and there shall be a space left for all road crossings, either neighborhood or public, at least thirty feet wide, with such stock guards on both sides of such road crossing as will prevent cattle. horses, hogs or other domestic live stock entering such railroad enclosures; all such fencing from such live stock guards shall run at an acute angle with the railroad track to the main line of fence and posts shall be placed in the ground not more than eight feet apart for a distance of sixty feet from such stock guards and one board shall be placed on said posts twelve inches from the earth. one thirty-six inches and one fifty-four inches from the earth and shall have such additional boards or wires as may be necessary to make the fence suitable and sufficient to prevent the intrusion upon the track by any cattle, horses, hogs and other domestic live stock; and there shall be such crossings and stock guards constructed on all railroads passing through farms at such places as may be reasonably requested by the owner or their agents."

"Any railroad company, person or persons owning or operating any railroad in this State who has failed to erect and maintain fences along the sides of its railroad track as is provided in this chapter shall be liable for the full cash value of any and all cattle, horses, hogs or other domestic live stock which may be killed or injured by any train, engine or cars upon the track of the said railroad, if the same be paid within sixty days after

the presentation of the claim for damages by the owner of the killed or injured live stock or his agent or attorney, whether the same was killed or injured negligently or not: Provided, That upon the failure to pay the claim within sixty days after its presentation the said railroad companies, person or persons owning or operating said roads not fenced as herein provided shall be liable for double the value of the animal killed or injured and for attorney's fees.

"The fences and stockguards required in this chapter shall be kept in good repair and maintained by the companies, person or persons owning or operating the said railroads so that they shall at all times be suitable and sufficient to prevent the intrusion of any cattle, horses, hogs or other domestic live stock upon the track of such railroad, and the failure of the railroad company, person or persons to maintain said fence as aforesaid, shall subject them to the same penalties as is provided for in this chapter for failure to erect such fences and stock guards.

"When any live stock is killed or injured upon any railroad in this State. the person entitled to damages therefor. shall by himself, attorney or agent. give notice and present his claim to any general agent or any stock claim agent or general officer of the corporation, or any person or persons owning or operating the said railroad or to any depot or station agent for said corporation, person or persons, residing in the county where such live stock was killed or injured, which said notice and presentation of claim shall be in writing, and after such presentation of claim and notice, said corporation or person shall fail to pay for the said claim for the space of sixty

days, suit may be brought in any court of this State having competent jurisdiction by the person having the general or special property in said live stock, but nothing herein shall be construed to authorize two suits by different parties for the same cause of action."

"If when the claim is presented as provided in the foregoing section, said corporation, person or persons operating the railroad as aforesaid shall deem such claim unreasonable and unjust, and shall tender or offer to pay such amount for damages as in their estimation is reasonable and just for the live stock so killed or injured and the claimant shall refuse to accept the amount tendered or offered to be paid, and upon the trial of the cause a jury, or the judge in case the cause be tried without a jury, under the proofs find a verdict for not more than the amount so tendered or offered as aforesaid the court shall render judgment against the plaintiff in favor of the defendant for all reasonable cost. and said cost shall be deducted from the amount assessed as damages for the live stock killed or injured and the plaintiff shall not be entitled to any attorney's fees as provided in cases where the plaintiff prevails."

"When the owner of any live stock killed or injured upon any railroad in this State by the engine, train or cars of any company or person or persons owning or operating the said railroad, said road not being fenced, and provided with stock guards as required by this chapter, shall bring suit either by himself, agent or attorney, to collect damages for the killing or injury, after having given the notice required in this chapter, and upon the trial of such case the jury, or in case the same be tried without a jury, the judge of the court trying the case,

shall after hearing the evidence of the value decide the value to be less than the amount demanded in the written notice and presentation of claim required by this chapter, but more than the amount tendered or offered, then and in that case the court shall render judgment for the plaintiff against the defendant for the actual value only and cost of suit and attorney's fees to be fixed as hereinafter provided; but if the value be not less than the amount as originally claimed or demanded as aforesaid then in that case the court shall render judgment for the plaintiff against defendant for double the damage found to be due the plaintiff by reason of the killing or injury of the live stock, and also render judgment against the defendant in favor of the plaintiff for all costs of the said suit, which said costs shall include a reasonable attorney's fee. said fee to be determined by the court: Provided, however, that no attorney fee shall be allowed any plaintiff not represented by an attorney in the suit, and provided that any animal which may be injured by the operation of a railroad in this State so seriously that it cannot reasonably be expected to recover may be killed by the owner, the employees of said railroad or any other person, if necessary to terminate incurable suffering, and the killing of such animal under such circumstances by any person shall be deemed a killing by the railroad company responsible for the injuries under the provisions of this chapter." Sections 2868, 2870, 2871, 2872, 2873, 2874 and 2875, General Statutes of 1906, Florida Compiled Laws, 1914.

These statutory provisions enacted under the police power of the State were designed to prevent the intrusion of cattle, horses, hogs or other domestic live stock upon railroad tracks by requiring the railroad compan-

ies to construct and maintain fences on both sides of a railroad suitable and sufficient to prevent such intrusion with stock guards on both sides of road crossings as will prevent live stock entering such railroad enclosures. The fence and stock guard regulations have reference to the going of live stock upon railroad tracks. not to the tortious acts of persons in leading, holding and keeping such live stock upon the tracks until they are killed by a passing train. In the latter class of cases the failure to construct and maintain the fence and stock guards. required by the statute has no casual relation to the killing of the live stock by a train. But an independent efficient force causes the presence of the stock on the track when it is killed. Even if the statute were subject to a construction that when the fence and stock guard provisions are not complied with, liability attaches to the railroad for the killing of live stock put and kept on the track by others than the owner, the construction above given should be preferred to avoid apparent or real conflict with organic law.

As the second plea avers that the two mules were by parties unknown to the defendant led upon the track and there held and kept by such unknown parties upon the tracks in a deep cut on a curve until the mules were killed by a passing train without any failure of duty or fault or negligence on the part of the defendant, the averments set up a defense and the demurrer thereto should have been overruled. The evidence and subsequent proceedings in the case indicate harmful error in sustaining the demurrer to the second plea. It is not necessary in this view to discuss the question presented as to the validity of the statutory provision under which attorney's fees were awarded.

Judgment reversed.

TAYLOR, ELLIS AND WEST, J. J., concur.

BROWNE, C. J., dissents.

BROWNE C. J., dissenting—I cannot concur in this decision. The testimony shows that the mules were led on to and entered upon the track at a road-crossing. This could not have ben done if the railroad had had proper cattle guards as required by the statute, as it would have been practically impossible for the mules to have been led across them. The statute provides that the stock guards shall be such as will "prevent" cattle, etc., from "entering such railroad enclosures." The theory upon which this decision rests is, that if the railroad had had such a fence and cattle guards as the statute requires, the parties leading the mules on to the track would have either taken up the cattle guards or built a platform over them, or broken down the fence at some other point, and thus gotten them on the track. There is nothing to warrant this presumption, nor would it be a defense if there were.

If this is a good defense where cattle are led on to a railroad track, it would be equally available if they were driven thereon, or if the cattle stampeded, as is often the case, from no known cause. We would thus have this situation: If a bunch of cattle stampeded through the act of some unknown person or from some unknown cause, and went upon a railroad track and some of them were killed, it would be a valid defense for the railroad to show that even if it had had a fence as required by law, it would not have held back a bunch of stampeding

cattle. This would introduce an element of defense not contemplated by the law in favor of railroads that had negligently or wilfully refused to comply with the statute.

It is not contended that the owner of the mules was a party to or knew anything of the acts of the persons who led the mules on the track. and the argument that the railroad should not be made to stand the loss caused by the wrongful act of a third person, applies with greater force to the owner of the mules, as the testimony fails to show how he could have prevented the injury, whereas it appear that if the railroad had had cattle guards as required by the statute, they could not have entered upon the track at the point where they were led on to it. This conclusion is irresistible unless we say that the jury could presume that if there had been a proper fence and proper cattle guards, the person who led the mules on the track would have destroyed the fence, or removed the cattle guards, or constructed a platform over them. There is no room in the statute for such a presumption; and without it the railroad cannot escape liability for its negligence in not complying with the statute.

As the constitutionality of the state is not discussed in the opinion of the majority of the court, I express no opinion on it.